UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

721 BOURBON, INC.                              CIVIL ACTION


VERSUS                                         NO: 15-172


HOUSE OF AUTH, LLC                             SECTION: R(3)


## ORDER AND REASONS

Defendant House of Auth, LLC ("HOA") moves the Court to dismiss plaintiff 721 Bourbon, Inc.'s trademark infringement, trademark dilution, unfair competition, and unfair trade practices claims against it for lack of personal jurisdiction.  For the following reasons, the Court GRANTS the motion.


## I.    BACKGROUND

This is a trademark and unfair competition case.  Plaintiff 721 Bourbon is a Louisiana company that owns and operates several "Tropical Isle" bars in New Orleans.[1]  Tropical Isle serves specialty cocktails called GRENADES or HAND GRENADES, as well a GRENADE ENERGY DRINK beverage, and it

---

[1] R. Doc. 1 at 1.

holds eight federal trademark registrations protecting its family of Grenade-related marks.[2]

HOA is a Delaware Limited Liability Company with its principal place of business in Stamford, Connecticut.[3] It produces and sells a beverage whose label contains the word GURRNAID, along with a stylized "G" that resembles a hand grenade.[4] HOA has a website that offers products for sale and allows users to order products online.[5] HOA acknowledges that it has sold one set of its GURNNAID products--beverages, as well as apparel bearing the same GURRNAID mark--to a Louisiana resident through its website and that it communicated with the resident via email and telephone about the order.[6] But, as 721 Bourbon admits, that resident was a private investigator hired by 721 Bourbon itself.[7]

721 Bourbon filed suit against HOA in this Court on January 23, 2015. Its complaint pleads several claims in connection with HOA's use of its

---

[2] *Id.* at 1-2.

[3] *Id.* at 2; R. Doc. 14-3, at 1. (Declaration fo Renate Cordts-Auth).

[4] R. Doc. 1 at 4.

[5] R. Doc. 14-3, at 3. (Declaration fo Renate Cordts-Auth).

[6] *Id.*

[7] *See* R. Doc. 24, at 17 (Plaintiff's Opposition to Defendant's Motion to Dismiss).

GURRNAID mark, including federal trademark infringement, trademark dilution, and unfair competition under the Lanham Act, as well as trademark infringement and dilution under Louisiana law.[8]  721 Bourbon seeks a preliminary and permanent injunction against HOA's alleged infringement of its Grenade trademarks, as well as damages, interest, costs, and attorney fees.[9]

On May 1, 2015, HOA filed a motion to dismiss for lack of personal jurisdiction.[10]  Along with the motion, HOA filed a sworn declaration by Renate Cordts-Auth, HOA's managing director, who states that HOA has no offices or employees in Louisiana, that it does not own or rent any property within the state, and that its only sale to a Louisiana resident was to 721 Bourbon's private investigator.[11]  721 Bourbon does not dispute these basic assertions.  Instead, it argues that HOA has sufficient contacts with Louisiana to authorize personal jurisdiction based on (1) its sale of allegedly infringing products, through its website, to 721 Bourbon's Louisiana-based investigator and (2) HOA's aiming of intentionally tortious conduct towards Louisiana.[12]

---

[8] *Id.* at 10-15.

[9] *Id.* at 16.

[10] R. Doc. 14-2.

[11] R. Doc. 14-3.

[12] R. Doc. 24 at 15-21.

3

After HOA filed its motion to dismiss, the parties agreed to a period of jurisdictional discovery.  Initially, HOA's motion was scheduled for submission on June 17, 2015, but HOA agreed to reset the submission date to August 5, 2015, giving 721 Bourbon an additional seven weeks to develop facts to support its case for personal jurisdiction.[13]  721 Bourbon served a request for production on HOA on June 3, 2015.[14]  The very next day, HOA's counsel emailed 721 Bourbon stating that HOA objected to the scope of several of 721 Bourbon's discovery requests.[15]  On July 6, 2015, HOA served its discovery responses, which included many of the same objections that counsel for HOA had previously described.[16]  Although 721 Bourbon now takes issue with some of HOA's objections,[17] it has not filed a motion to compel production of

---

[13] *Id.* at 10.

[14] R. Doc. 24-3 at 1.

[15] R. Doc. 27-4 at 2-3.

[16] R. Doc. 24 at 10.

[17] Specifically, 721 Bourbon takes issue with HOA's failure to provide: (1) any and all communications which refer to or relate to Tropical Isle; (2) any and all documents relating to HOA's decision to use the GURRNAID mark; (3) any and all documents relating to three trademark applications that HOA filed with the United States Patent and Trademark Office (USPTO); and (4) any and all documents relating to HOA's knowledge of Tropical Isle's registered trademarks.  According to 721 Bourbon, these documents are relevant to the existence of jurisdiction because they demonstrate HOA's awareness of 721 Bourbon's registered trademarks, which, in turn, shows that HOA's infringement was intentionally tortious conduct aimed at 721 Bourbon in Louisiana.  R. Doc. 24 at 11-12.

discovery in this case.

## II.    STANDARD

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).   When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the nonmoving party need only make a *prima facie* showing; "[p]roof by a preponderance of the evidence is not required."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008).   The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).  In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985)).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. R.S. § 13:3201, et seq., extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)). The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Revell*, 317 F.3d at 470 (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has

engaged in "continuous and systematic" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Wilson*, 20 F.3d at 647.  Contacts between a defendant and the forum state must be "extensive" to satisfy the "continuous and systematic" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001); *see also  Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853–54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)); *see also Helicopteros Nacionales*, 466 U.S. at 414 n.8.  Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant whereby it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

(1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Importantly, "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228).

The Fifth Circuit has synthesized the test for specific jurisdiction into a three-step inquiry. The court must determine

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).   "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its

8

exercise would be unfair or unreasonable." *Id.*

## III. DISCUSSION

HOA contends that the Court lacks jurisdiction over it because 721 Bourbon has failed to allege sufficient minimum contacts between it and Louisiana.  721 Bourbon counters that HOA has contacts with Louisiana sufficient to confer specific jurisdiction.[18]  In support, 721 Bourbon offers two basic arguments.  First, it argues that HOA made contact with Louisiana by selling products through its website to 721 Bourbon's  Louisiana-based investigator and then communicating with the investigator about the sale.  Second, 721 Bourbon contends that jurisdiction exists under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), because by marketing products that allegedly infringe 721 Bourbon's trademarks, HOA has engaged in intentional tortious conduct designed to injure 721 Bourbon in Louisiana.  The Court addresses each argument in turn.[19]

---

[18] 721 Bourbon does not contend that this Court has general jurisdiction over HOA.  R. Doc. 24 at 13 ("Because the facts establish that the Court has specific jurisdiction over HOA, [plaintiff] will forego establishing general jurisdiction.").

[19] The Court notes that specific personal jurisdiction is claim-specific, meaning that if a plaintiff's claims relate to different forum contacts of the defendant, then specific jurisdiction must be established for each claim.  *Seiferth v. Helicopteros Atenuros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006).  Here, however, 721 Bourbon does not distinguish between its trademark claims and its related claims under federal and state law.  Rather, it cites two particular sets of contacts and relies on two arguments to

## A.    HOA's Sale of Merchandise Through its Website

721 Bourbon argues that HOA has established "traditional business contacts" with Louisiana sufficient to confer specific jurisdiction.  In support, 721 Bourbon relies chiefly on: (1) HOA's sale of allegedly infringing merchandise, through its website, to 721 Bourbon's Louisiana-based investigator; (2) HOA's exchange of emails and phone calls with 721 Bourbon's investigator concerning the order; (3) HOA's shipment of merchandise to the investigator's Louisiana address; and (4) HOA's issuance of a partial refund to the investigator for expedited shipping services that were not provided.  HOA submits that it has no offices or employees in Louisiana; that it does not own or rent any property within the state; and that its only sale to a Louisiana resident was to 721 Bourbon's private investigator.  Other than this single transaction, HOA has never sold any merchandise in Louisiana--through its website or otherwise.  HOA supports these contentions with the sworn declaration of Renate Cordts-Auth, HOA's managing director.[20]  721 Bourbon does not dispute these basic contentions.[21]

---

support jurisdiction over its lawsuit as a whole.  Because both sets of contacts are plainly insufficient to authorize jurisdiction, the Court rejects both of 721 Bourbon's arguments with respect to each one of its claims.

[20] R. Doc. 14-3.

[21] While 721 Bourbon does argue that some of HOA's responses to jurisdictional discovery were deficient, the responses that 721 Bourbon takes issue with relate to

A court, in determining whether it can exercise personal jurisdiction over a nonresident defendant based on the defendant's online presence, "look[s] to the 'nature and quality of commercial activity that an entity conducts over the Internet.'" *Mink*, 190 F.3d at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).  To structure this inquiry, courts frequently draw on the test set forth in *Zippo*, which "categorized Internet use into a spectrum of three areas" as follows:

> At one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet. . . ."  In this situation, personal jurisdiction is proper.  At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet.  With passive websites, personal jurisdiction is not appropriate.  In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer.  In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."

*Id.* (alteration in original) (citations omitted).  Importantly, while the *Zippo* sliding scale remains a "factor in the jurisdiction analysis," the Fifth Circuit

---

HOA's alleged knowledge of 721 Bourbon's trademark and its decision to use its own GURRNAID designation.  *See* R. Doc. 24 at 10-12.  721 Bourbon does not suggest that HOA misrepresents the nature of its commercial activities in Louisiana; nor does not it give the Court reason to believe that HOA has sold products to any Louisiana resident other than 721 Bourbon's private investigator.

has indicated that "internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012).

In applying the *Zippo* test, district courts within the Fifth Circuit have often exercised personal jurisdiction over defendants whose websites enabled online purchases. *See Tempur–Pedic Int'l v. Go Satellite, Inc.*, 758 F.Supp.2d 366, 373 (N.D.Tex.2010) (defendant's website "allow[ed] placement of online orders and enabl[ed] communication between Texas-based customers and [defendant's] sales staff via live chat and e-mail"); *AdvanceMe, Inc. v. Rapidpay, LLC*, 450 F.Supp.2d 669, 673 (E.D.Tex.2006) (defendant's website allowed potential customers to "fill out an online form and apply for [defendant's] services through its website"); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 901 (N.D.Tex.2000) (website allowed customers to "submit product order forms that contain credit card and shipping information" and to "receive personalized service directly from the web site by using the site's e-mail option").

Importantly, however, courts have also noted that personal jurisdiction requires more than a mere *possibility* that forum residents may purchase

12

products on a nonresident defendant's website.  In *Origin Instrument Corp. v. Adaptive Computer Systems, Inc.*, a trademark case, defendant operated a "moderately interactiv[e]" website, which contained information about allegedly infringing products, provided a link to defendant's email, and allowed customers to purchase and directly download software via a hyperlink to another site.  1999 WL 76794, at *3.  Nonetheless, the court found that personal jurisdiction was improper because the defendant had not used its site to interact with anyone in the forum state.  *Id.* at *4.  The court reasoned that because specific jurisdiction requires a showing of purposeful availment, jurisdiction "should not be premised on the mere possibility that a Defendant may be able to do business with Texas over its website, with nothing more." *Id.*  Similarly, in *Monistere*, the court found that a website that allowed users to purchase products that allegedly infringed the plaintiff's patent, did not give rise to personal jurisdiction.  2013 WL 6383886, at *7.  Following *Origin Instruments*, the court concluded that although the defendant's website was "highly interactive" and permitted online transactions, "personal jurisdiction cannot be established by the mere *possibility* that Louisiana residents may purchase products on Defendants' website, without further proof that Defendants have purposefully availed themselves of this forum." *Id.* at *7-*8. As these cases make clear, personal jurisdiction cannot rest on internet-based

exchanges that are possible in theory but have yet to materialize. Instead, there must be evidence of an *actual* "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

Moreover, as the Supreme Court has made clear, the relationship required for specific personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). Thus, the focus of the jurisdictional inquiry is on the defendant's own conduct, not the unilateral activity of a plaintiff. *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 109 (1987) (noting that the Supreme Court has "rejected the assertion that a consumer's unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant").

In applying these principles, district courts within the Fifth Circuit have concluded that it is improper to rely on a transaction--for jurisdictional purposes--that was initiated by the plaintiff. In *QR Spex, Inc. v. Motorola, Inc.*, for example, the defendant sold products that allegedly infringed the plaintiff's patent. 507 F. Supp. 2d 650, 661 (E.D. Tex. 2007). The plaintiff

hired an investigator, who purchased two such products by "reaching out to non-Texas retailers" and arranging a shipment to the forum state.  *Id.*  The Court refused to consider these purchases "because they constitute [plaintiff's] unilateral acts; albeit acts that successfully circumvented the measures [defendant] undertook to avoid availing itself to this forum."  *Id.*  Similarly, in *Tempur-Pedic*, a trademark case, the defendant operated a website that sold products online, making at least three sales to residents of the forum state. 758 F. Supp. 2d at 375.  The defendant argued that jurisdiction was improper because one of these sales was to a private investigator hired by the plaintiff. The court stated: "there are cases in this circuit that support the premise that plaintiff cannot establish *in personam* jurisdiction based on such sales." Nonetheless, the court found that jurisdiction existed, noting that the plaintiff had no involvement in two of the defendant's sales.  Finally, in *Monistere*, a defendant used its website to sell products that allegedly infringed plaintiff's patent, but its only sale to a resident of the forum state was to the plaintiff himself.  2013 WL 6383886, at *7.  The court found personal jurisdiction lacking, reasoning: "for this one contact with Louisiana to constitute purposeful availment of this forum by Defendants, the contact must result from Defendants' purposeful conduct, not merely from the unilateral activity of Plaintiff."  *Id.*

15

Here, HOA's website is more than just an online billboard, passively relaying information; it allows visitors to purchase HOA's allegedly infringing products online.  But while its online presence makes sales to Louisiana residents possible, HOA's actual contact with Louisiana has been de minimis.  The undisputed evidence reveals that HOA has made only one sale to a Louisiana resident.  Moreover, this single sale was made not to a disinterested third party but to an investigator acting on behalf of 721 Bourbon.  As *QR Spex*, *Tempur-Pedic*, and *Monistere* make clear, a plaintiff cannot rely on such unilateral activity to manufacture jurisdiction in its chosen forum.[22]  Indeed, the Court finds it particularly problematic for 721 Bourbon to rely on its own investigator's purchase here, given that its trademark claims are founded on notions of customer confusion.  Clearly, 721 Bourbon's investigator was not confused as to the source of the products in question.  *See U.S. Olympic Comm. v. Does 1-10*, 2008 WL 2948280, at *2 (N.D. Cal. July 25, 2008) ("Because the gravamen of such claims involve deceiving and confusing customers, courts considering similar claims have rejected attempts by plaintiffs to manufacture contacts with the forum state by having an agent

---

[22] The Court notes that numerous courts in other circuits have also expressed "hostility towards finding jurisdiction under such potentially manufactured circumstances."  *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) (collecting cases).

purchase the alleged infringing products."); *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006) (noting that plaintiff's agents' purchase of products that allegedly infringed plaintiff's trademark had "nothing to do with Plaintiff's action for infringement since [they] cannot claim to have been confused as to with whom [they] [were] dealing"). Accordingly, the Court will not rely on the sale of GURRNAID merchandise to 721 Bourbon's investigator as a basis for exercising personal jurisdiction over HOA.

The remaining contacts with Louisiana cited by 721 Bourbon are similarly unavailing because they too were initiated by 721 Bourbon's own investigator.  For instance, 721 Bourbon cites an email message that HOA' customer service representative sent to its private investigator. But this email was not a marketing outreach effort intended to create new inroads into the Louisiana market; its purpose was merely to confirm the order that the investigator had already placed.[23]  721 Bourbon also cites two phone conversations between HOA representatives and the investigator.  But these too were routine customer service efforts that the investigator himself initiated, first by placing his order and then by emailing and calling HOA to

---

[23] *Id.* at 5 (Email from "andie@gurrnaid.com" to "dcbell3rd@mac.com" stating: "Thank you for placing your order with Gurrnaid!  This email is to confirm your recent order.").

check the status of his shipment.[24]   The same is true of the check that HOA mailed the investigator, which merely refunded the investigator for expedited shipping services, as the investigator specifically requested.[25]   Like the investigator's order itself, each of these contacts was initiated by 721 Bourbon itself.   As such, they do not evidence purposeful availment of Louisiana by HOA and cannot give rise to personal jurisdiction in this forum.[26]

### B.   HOA's Aiming of Intentionally Tortious Conduct at Louisiana

721 Bourbon's second argument is that this Court has personal jurisdiction over HOA because HOA "engaged in tortious conduct outside of the forum state that was intended to and d[id] in fact cause injury within the

---

[24] *Id.* at 7 (Email from "david-bell@cox.net" to "info@gurrnaid.com" stating: "I placed an order on January 07, 2015 under order number 1037.  This order has not arrived to date, can someone advise me as to when I can expect the order?  Also I paid for 2 day shipping which I would like to be refunded.").

[25] *Id.*

[26] 721 Bourbon also sites a statement that a customer service representative for HOA allegedly made to its 721 Bourbon's private investigator during a phone call.  After first discussing HOA's shipment of the investigator's order, the investigator asked about HOA's distribution to stores in Louisiana.  HOA's representative allegedly responded: "No, we're not in Louisiana yet.  I'm hoping soon . . . . We'll be out there in the next couple of weeks--not weeks, next couple of years we'll definitely be out there."  R. Doc. 24 at 9.  HOA argues that this statement lacks a proper evidentiary foundation and is therefore inadmissible.  But even if these statements could be admitted into evidence, they would not support a finding of personal jurisdiction, because they do not indicate that HOA has purposefully availed itself of the benefits and protections of Louisiana.  At most, they indicate that HOA "hopes" to engage with the forum at some undefined point in the future.  Hopes for the future do not constitute purposeful availment.

18

forum state."[27]  To support this argument, 721 Bourbon relies on *Calder v. Jones*, 465 U.S. 783 (1984), and on a district court case applying *Calder*, *Source Network Sales & Marketing, LLC v. Ningbo Desa Electrical Mfg. Co., Ltd.*, 2015 WL 2341063 (N.D. Tex. May 15, 2015).  The Court finds that unlike in those two cases, there is no evidence here that HOA's actions were specifically targeted at *Louisiana*, as is required to support specific jurisdiction.

In *Calder*, an actress living in California brought a libel suit in California state court against a reporter and an editor for the National Enquirer, a publication based in Florida but whose largest market was California.  465 U.S. at 784-85.  The Supreme Court noted that the allegedly libelous article drew on California sources; that the article centered on the California activities of a California resident; and that the defendants knew that "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."  *Id.* at 787-90.  Because California was the "focal point both of the story and of the harm suffered," the Court held that California's exercise of jurisdiction over defendants  was consistent with due process.  *Id.* at 789.

---

[27] R. Doc. 17-21.

Recently, the Supreme Court clarified the application of *Calder* in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).  There, a Georgia police officer seized the plaintiffs' cash at an airport in Atlanta, Georgia.  *Id.* at 1119.  When the plaintiffs returned to Nevada, they filed suit against the officer in that state, alleging that the officer violated their Fourth Amendment rights by, among other things, seizing their cash without probable cause and drafting a false affidavit.  *Id.* at 1120.  The Supreme Court reiterated that the jurisdictional inquiry is focused on "the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there."  *Id.* at 1122.  When the only basis for the exercise of specific personal jurisdiction is "a defendant's relationship with a plaintiff or third party," then jurisdiction will not lie.  *Id.* at 1123.  Applying these principles, the Court concluded that the Nevada district court lacked personal jurisdiction over the officer, who had "never traveled to, conduced activities with, contacted anyone in, or sent anything or anyone to Nevada."  *Id.* at 1124.

The Court reconciled its holding with its prior decision in *Calder* by stating: "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 1123-24.  The Court also noted that the strength of the relationship in *Calder* was largely a function of the nature of the libel tort.  *Id.* at 1124.

Because libel requires publication to third persons, "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Id.* The Court concluded that under *Calder*, "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant' conduct connects him to the forum in a meaningful way." *Id.* at 1125.

Here, HOA's use of allegedly infringing product designations does not meaningfully connect it to Louisiana. Unlike in *Calder*, where the defendants' article was published to numerous readers in California, HOA has not marketed or sold any merchandise in Louisiana or completed any transactions with Louisiana residents--excepting, of course, its single sale to 721 Bourbon's own investigator, which the Court has found insufficient to confer jurisdiction. HOA's only connection to Louisiana is that plaintiff 721 Bourbon happens to be based there. Specific personal jurisdiction cannot rest on such "random, fortuitous, or tentative" connections. *Burger King*, 471 U.S. , at 475; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) ("We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court . . . when the 'potential' injury claimed by Appellants resulted from interference with financing agreements

that have nothing to do with Texas except for the mere fortuity that Appellants reside there.").

721 Bourbon makes much of the fact that the USPTO previously denied two of HOA's applications for trademark registration, citing the likelihood of confusion with marks owned by 721 Bourbon.  721 Bourbon argues that because these Office Actions put HOA on notice of 721 Bourbon's mark, HOA's continued use of its mark is aimed directly at 721 Bourbon and intended to cause harm in this state.[28]  This argument fails because it focuses inordinately on HOA's connection with 721 Bourbon, not Louisiana.  As the Supreme Court instructed in *Walden*, specific jurisdiction cannot rest solely on a nonresident's defendant's relationship with a plaintiff, who happens to reside in the forum state.  Where, as here, a defendant's contacts with the forum state occur merely because a plaintiff is a resident of that state, there is nothing to indicate that the defendant directed its activities at the state or purposefully availed itself of the state's benefits and protections.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) ("We have expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident.").  Thus, personal jurisdiction

---

[28] R. Doc. 24 at 4-8, 14-15.

does not lie in the forum.

721 Bourbon's reliance on *Source Network*, a case from the Northern District of Texas, is also unavailing.  There, a Texas plaintiff filed a trademark infringement and unfair competition suit in Texas against a nonresident defendant, and the Texas court found that specific personal jurisdiction existed under *Calder*.  2015 WL 2341063, at *2.   Importantly, the court emphasized the defendant had initiated contact with Texas by sending the plaintiff a cease and desist letter and by emailing several of the plaintiff's Texas-based customers about matters directly relevant to the plaintiff's lawsuit.  *Id.*, at *8 n. 8.  Neither of those factors are present here.  HOA did not send 721 Bourbon a cease-and-desist letter; nor has it initiated contact with either 721 Bourbon or any of its Louisiana-based customers.   Thus, the reasoning of the court in *Source Network* does not apply to the very different facts at issue here.

For these reasons, the Court therefore that HOA does not have sufficient minimum contacts with Louisiana such that the exercise of specific personal jurisdiction over HOA would comport with due process.

## C.    Additional Discovery on Personal Jurisdiction

721 Bourbon submits in the alternative that the Court should defer ruling on personal jurisdiction until trial, citing the "intertwined" nature of its

jurisdictional case and the merits of its claims.  721 Bourbon argues that both the question of jurisdiction under *Calder* and the merits of its case turn on HOA's awareness of 721 Bourbon's trademarks and its intent to harm 721 Bourbon in Louisiana by infringing those marks.  721 Bourbon also takes issue with HOA's responses to jurisdictional discovery, arguing that HOA's "deficient" responses to its requests for production deprived 721 Bourbon of the ability to make a more complete showing of personal jurisdiction.  For these reasons, 721 Bourbon argues that it should be permitted to conduct additional discovery and present its jurisdictional case alongside its case on the merits at trial.[29]

The Court rejects 721 Bourbon's request.  Initially, the Court notes that 721 Bourbon had an opportunity to conduct jurisdictional discovery.  After filing its motion to dismiss, HOA agreed to reset the submission date for its motion from June 17, 2015 to August 5, 2015, thereby giving 721 Bourbon an additional seven weeks to develop facts to support its case for personal jurisdiction.[30]  On July 3, 2015, 721 Bourbon served a request for production on HOA.[31]  HOA served its discovery responses on 721 Bourbon on July 6,

---

[29] *Id.* at 21-22.

[30] *See id.* at 10.

[31] R. Doc. 24-3 at 1.

2015, outlining numerous objections to the scope of 721 Bourbon's discovery requests.[32]   This response gave 721 Bourbon over four weeks before the submission date to review HOA's submission and, if necessary, to seek an order compelling production of discovery under Rule 37 of the Federal Rules of Civil Procedure.  721 Bourbon has filed no such order.  Instead, it raises the adequacy of HOA's discovery for the first time in its opposition to HOA's motion to dismiss.  This tactic deviates from the procedural rules of this Court and unfairly prevents HOA from briefing its opposition to discovery in response to a properly-filed motion.

More importantly, the information that 721 Bourbon seeks is irrelevant to the existence of personal jurisdiction.  It is well established that "discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact."  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000).  And, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."  *Id.*  Here, HOA has produced evidence that it operates entirely outside of Louisiana and that it has made no transactions with Louisiana residents, other than a single sale, through its website, to 721 Bourbon's own

---

[32] R. Doc. 24 at 10.

investigator.  721 Bourbon has not identified any evidence that might rebut HOA's evidence of its lack of contacts or raise an issue of fact regarding personal jurisdiction.  721 Bourbon argues instead that it should be permitted to conduct more discovery on HOA's awareness of 721 Bourbon's registered trademarks and its "intent relating to the sale of [its] infringing products."[33] But, as noted, personal jurisdiction cannot rest solely on the relationship between a nonresident defendant and a plaintiff with ties to the forum state. Thus, the absence of personal jurisdiction is clear.  And no amount of additional information on HOA's intent to harm 721 Bourbon in Louisiana through its sale of infringing products can cure the jurisdictional defect.[34]

---

[33] *Id.* at 22.

[34] 721 Bourbon has also moved the Court to take judicial notice of the following documents: (1) HOA's trademark application for its GURRNAID mark, serial number 85334793; (2) an office action issued by the USPTO to HOA in connection with that application; (3) a notice of abandonment issued by the USPTO to HOA in connection with that application; (4) HOA's trademark application for its GURRNAID mark with a stylized "G," serial number 85334885; (5) an office action issued by the USPTO to HOA in connection with that application; (6) a notice of abandonment issued by the USPTO to HOA in connection with that application; and (7) a statement of use filed by HOA for a trademark application bearing serial number 8516086. R. Doc. 23 at 1-2. 721 Bourbon argues that these documents are relevant to the question of personal jurisdiction because they "help establish the who did what, where, when, how, and with what motive or intent." *Id.* at 3. In other words, 721 Bourbon submits these documents to the Court as evidence of HOA's intentions vis-a-vis 721 Bourbon.  The Court has already concluded that jurisdiction cannot rest on HOA's intent to harm 721 Bourbon alone.  Thus, the documents for which 721 Bourbon seeks judicial notice do not alter the Court's ruling on HOA's motion to dismiss for lack of personal jurisdiction.  721 Bourbon's motion for judicial notice is therefore dismissed as moot.

The Court finds that 721 Bourbon has failed to make a *prima facie* showing of personal jurisdiction.  As such, additional discovery on personal jurisdiction is not warranted, and 721 Bourbon's case must be dismissed.

## IV.   CONCLUSION

For the Court GRANTS defendant's motion to dismiss for lack of personal jurisdiction.

New Orleans, Louisiana, this 19th day of October, 2015.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE